# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|                                        |     |                              |
| -------------------------------------- | --- | ---------------------------- |
| **TAMMY ASPERA,**                      | )   |                              |
|                                        | )   |                              |
| **Plaintiff,**                         | )   |                              |
|                                        | )   | **No. 04 C 4358**            |
| v.                                     | )   |                              |
|                                        | )   | **Paul E. Plunkett, Senior Judge** |
| **COPPERWELD CORPORATION,**            | )   |                              |
| **successor in interest to LTV STEEL** | )   |                              |
| **TUBULAR PRODUCTS,**                  | )   |                              |
| **LTV/COPPERWELD and**                 | )   |                              |
| **COPPERWELD TUBULAR**                 | )   |                              |
| **PRODUCTS.**                          | )   |                              |
|                                        | )   |                              |

## MEMORANDUM OPINION AND ORDER

In her second amended complaint, Plaintiff, Tammy Aspera ("Aspera") alleges several

violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, by

her former employer, Defendant Copperweld Corporation ("Copperweld"). Before the Court is

Copperweld's motion for summary judgment, filed pursuant to Rule 56 of the Federal Rules of Civil

Procedure. For the reasons provided below, the Court grants Copperweld's motion.

## Background

Before examining the factual background of this case, the Court takes a moment to comment

on two aspects of the procedural history associated with the present motion for summary judgment,

namely Aspera's failure to timely respond to Copperweld's summary judgment motion and

Copperweld's verbose memorandum in support of its summary judgment motion. First, at a status

hearing on September 22, 2005, this Court set a briefing schedule establishing the filing dates for any motions for summary judgment to be filed in connection with this case. Under that schedule, the parties were given until October 24, 2005 to file their motions, until November 21, 2005 to respond to said motions and until December 5, 2005 to reply. Thereafter, the Court planned on ruling on any such motions by January 26, 2005.

Following this Court's schedule, on October 24, 2005, Copperweld moved for summary judgment. After two telephone calls by Court staff to counsel for Aspera, inquiring into the status of her response, and after missing its response date by almost nine weeks, on January 23, 2006, a mere three days prior to this Court's scheduled ruling date, Aspera's counsel finally filed a two-page motion for an extension of time.[1]  In that motion, counsel asked this Court for "leave to submit plaintiff's reply memorandum and statement of uncontested facts in the next three weeks, with the briefing schedule to be reset accordingly" and cited to various reasons for failing to timely file a response. Pl.'s Mot. Extension of Time ¶ 3. However, after conducting a motion hearing, this Court denied Aspera's motion for an extension of time, noting that it would rule solely on the materials submitted by Copperweld on October 24, 2005. *See* Minute Order, No. 04 C 4358 (N.D. Ill. Jan. 27, 2006) [doc # 30]. Because it is well within this Court's power to deny leave to file a late response, the facts submitted in Copperweld's Local Rule 56.1 statement of facts will be deemed admitted. *See* N.D. Ill. R. 56.1(b)(3)(B) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.");

---

[1] According to this Court's judicial home page, located at http://www.ilnd.uscourts.gov/JUDGE/PLUNKETT/peppage.htm, "[m]otions for an extension of time *must be filed before the date the brief is due* and should be agreed if possible."

*Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921-22 (7th Cir.1994) (listing numerous cases in which the Seventh Circuit has "repeatedly upheld the strict enforcement" of regulations such as Local Rule 56.1). *See also Wahlfeldt v. Publishers Circulation Fulfillment, Inc.*, No. 01 C 3144, 2002 WL 31236295, at *1 (N.D. Ill. Oct. 3, 2002) (deeming admitted defendant's Local Rule 56.1 statement of facts where plaintiff failed to file a response to that statement). Yet, even if this Court granted Aspera leave to file a late response, the Court does not believe the ultimate result would be different as many of Copperweld's statements of material facts are substantially based on Aspera's own deposition testimony - indeed, approximately two-thirds of the paragraphs in Copperweld's statement of facts contain at least one citation to Aspera's deposition testimony.

Second, the Court notes Copperweld's inability to follow Local Rule 7.1 as well as this Court's case management procedure based on that rule. Local Rule 7.1 explicitly sets a page limit of fifteen pages for briefs filed with the U.S. District Court for the Northern District of Illinois, *absent leave of court*. N.D. Ill. R. 7.1. Moreover, it provides a penalty for failing to so comply: "Any brief . . . that does not comply with this rule shall be filed subject to being stricken by the court." *Id*. Similarly, according to the Court's own case management procedure found on its judicial home page, the Court notes that "[t]he fifteen (15) page limitation on all memoranda shall be strictly enforced" adding that "[a] motion exceeding that limit is looked upon with disfavor and shall not be granted except in unusual circumstances." *See supra* n.1 (citing this Court's judicial web page).

Notwithstanding the Local and Court rules, in support of its motion for summary judgment, Copperweld filed a forty-four page memorandum of law, exclusive of exhibits. After searching the Court's docket for a motion for leave to file a brief in excess of fifteen pages, the Court notes it cannot find one. Nor can this Court find any record of an order where such leave was granted,

perhaps even without a written motion. Thus, the Court is left to conclude that counsel for Copperweld filed a brief nearly three times in excess of the maximum allowance without leave of Court. While in the usual case, this Court would simply strike the excess pages in accordance with Local Rule 7.1, this is not such a case due to Aspera's counsel's failure to timely file her response to Copperweld's motion for summary judgment. Indeed, if the Court were strike the excess pages, it would hardly have anything to rule on. Though the Court declines to strike the excess pages solely because of the unusual circumstances presented herein, it takes this opportunity to remind counsel that such tediously long briefs are disfavored by this and other courts and are in clear violation of Local Rule 7.1. Having addressed these preliminary issues, the Court turns to the facts.

Copperweld is a manufacturer, seller and distributor of tubular steel and wire products. Def.'s LR 56.1(a)(3) ¶ 5. At the time of Aspera's allegations, Copperweld served as the parent company to a number of subsidiaries, including Copperweld Tubing Products Company ("CTPC"), located in Bedford Park, Illinois, and Welded Tube Company of America ("Welded Tube"), located in Chicago, Illinois, sixteen miles away from the CTPC facility. *Id.* ¶ 7. Copperweld itself was a subsidiary to the larger LTV Steel Company. *Id.* ¶ 47.

On March 23, 1999, CTPC hired Aspera as a dispatcher in its Traffic Department at its Bedford Park location, reporting to Traffic Supervisor, Tom Neubauer ("Neubauer"). *Id.* ¶¶ 10, 13. As a dispatcher, Aspera's tasks included coordinating outbound truck loads for assigned customers, scheduling customer-routed trucks, answering telephones, as well as other miscellaneous duties. *Id.* ¶ 12. At the time of her hiring, CTPC had a sexual harassment policy in place and Aspera received a copy, retaining it for her personal records. *Id.* ¶¶ 8-11. Aspera's work history with CTPC was generally unremarkable, but not poor - she received one annual performance evaluation, receiving

a rating of "three" on a scale of one to five, which meant that she was "competent." *Id.* ¶ 14. She also received one written warning for spending the evening of February 18, 2000 in the sleeping unit of a truck located on CTPC's premises while intoxicated. *Id.* ¶ 15.

Aspera's complaint, amended complaints as well as her deposition testimony reflect a personality conflict between Aspera and Tony Temores ("Temores"), a Traffic Supervisor at Welded Tube. *Id.* ¶ 16. After meeting Temores for the first time, Aspera testified that she informed Neubauer that she did not care for Temores and Neubauer acknowledged her by stating that Temores had a strong, different type of personality. *Id.* ¶ 19. Notwithstanding such dislike, it appears that Aspera and Temores had relatively little face-to-face contact. *Id.* ¶¶ 18, 20. It also appears that the bulk of the contact between Aspera and Temores occurred via telephone and e-mail, with the volume of the contacts ranging from a day or more between contacts to five to six contacts per hour. *Id.* ¶ 21. The purpose of these contacts were work-related and generally concerned the coordination of truck shipments containing products produced by both CTPC and Welded Tube. *Id.*

Aspera's second amended complaint focuses on five types of harassing comments allegedly made by Temores between December 2000 and early February 2001 - a roughly two-month period. First, Aspera alleges Temores commented on her pubic hair when he asked her "Does the carpet match the drapes?" and if he could find out. *Id.* ¶ 23. Temores allegedly made this first comment once while visiting CTPC as well as "a couple times" over the telephone. *Id.* Second, Temores allegedly and repeatedly asked her during work-related telephone conversations to go out on a date with him. *Id.* ¶ 24. Third, Temores asked Aspera if she was married, doing so on more than one occasion, though Aspera could not recall an exact number. *Id.* ¶ 25. Fourth, Temores allegedly and teasingly stated that Aspera could not do her job (or do a good job) as a dispatcher because she was

"a girl." *Id.* ¶ 26.

The final comment made by Temores occurred on Tuesday, February 6, 2001, while Temores was filling in for Neubauer during Neubauer's scheduled vacation.[2] *Id.* ¶ 27. As Temores worked in Neubauer's office, Temores asked Aspera to come into the office in order to help him resolve a computer issue. *Id.* ¶ 29. After Aspera entered, leaving the office's door open, Temores allegedly commented on her shirt, a sweater zipping from the top of the shirt to the bottom. *Id.* ¶¶ 30, 35. According to Aspera, Temores asked her what she was wearing under her shirt and what she would do if he pulled down the zipper on her shirt.[3] *Id.* Aspera, shocked, left the office and told a friend about Temores alleged comments. *Id.* Though Temores worked at CTPC for the remainder of the week, Aspera does not allege any further inappropriate comments by Temores. *Id.* ¶ 31.

The record as presented by Copperweld reflects that Aspera did not inform her superiors of the content of the third and fourth comments as outlined above. *Id.* ¶¶ 23-26. After Neubauer's return from vacation on February 12, 2001, however, she informed him of Temores' carpet/drapes comment, Temores' dating requests as well as the February 6th incident, adding that she did not want to be around Temores again. *Id.* ¶¶ 24, 32. Neubauer replied by telling Aspera that if she needed to contact someone at Welded Tube, she should call Welded Tube's various traffic coordinators,

---

[2]According to Aspera at her deposition, Neubauer informed Aspera that he planned on taking a vacation and that Temores would replace him during that vacation. Def.'s LR 56.1(a)(3) ¶ 27. Aspera responded by stating that she did not like being around Temores, asking Neubauer whether Temores really needed to come to CTPC, contending that she could do her job without him. *Id.* However, at no point did Aspera explain to Neubauer why she did not want to be around Temores. *Id.*

[3]Temores' description differs from Aspera's. Though he does not deny commenting on Aspera's shirt, according to Temores, he commented "Isn't that zipper low enough" because Aspera's shirt was zipped down low. Def.'s LR 56.1(a)(3) ¶ 35. Aspera did not reply to his comment and continued with their conversation until they were finished smoking cigarettes. *Id.*

adding that he would contact Temores and instruct him not to speak with Aspera. *Id.* ¶ 33. According to Neubauer, after discussing the incident with Temores that day, Neubauer told Temores not to contact Aspera, but to rather contact him if he needed to contact CTPC's dispatching department. *Id.* ¶ 34.

Later that day, Neubauer also reported Aspera's complaint to Welded Tube's human resources manager, Charles Weede ("Weede"), who immediately undertook his own investigation. *Id.* ¶ 35. Together with other members of Welded Tube's human resources department, Weede interviewed Temores as well as Aspera. *Id.* ¶¶ 35-36. Not surprisingly, the interviews yielded different versions of the events of February 6th. *Id.* Yet, notwithstanding differing versions, Welded Tube issued a reprimand to Temores, warning him that if he received another complaint for sexual harassment, and that charge was found to be true, he would be terminated. *Id.* ¶ 38. The reprimand also instructed Temores not to further contact "the Complainant," *i.e.,* Aspera. *Id.* While Temores had brief work-related contacts with Aspera by telephone and e-mail, Aspera testified that Temores made no further inappropriate comments to her. *Id.* ¶¶ 40-41.

Around the time that Temores allegedly and inappropriately commented to Aspera, Copperweld's own parent company, LTV Steel Company, filed for bankruptcy protection in December 2000. *Id.* ¶ 47. Thereafter, in February 2001, Copperweld announced that its plan to consolidate its Chicago operations by closing the CTPC facility and merging it with the Welded Tube operation, thereby reducing various redundancies and inefficiencies in an effort to save money. *Id.* Copperweld informed employees that the plan would result in the termination of jobs at both

Welded Tube and CTPC.[4] *Id.* ¶ 47.

In accordance with that plan, around early to mid-March 2001, management at Welded Tube and CTPC began reviewing employee records and interviewing their respective employees in an effort to determine the consolidated workforce. *Id.* ¶ 50. With respect to the Traffic Departments of CTPC and Welded Tube, Charles Cairo ("Cairo"), had overall responsibility for both facilities. *Id.* ¶ 49. Among the employees Cairo selected for termination was Aspera. *Id.* ¶ 52. Cairo based his selection of Aspera on a number of factors, including: (1) Aspera had the shortest length of service of any employee in the Traffic Departments of both CTPC and Welded Tube; (2) Aspera lacked "the breadth of experience" possessed by the Traffic Department employees that were ultimately retained; (3) Aspera's unwillingness to work shifts other than the day shift if she was retained. *Id.* ¶ 52. On March 15, 2001, Cairo informed Aspera that she had been selected for termination. *Id.* ¶ 53.

Though Cairo ultimately selected Aspera for termination, the termination was not implemented immediately. Rather, it appears that CTPC would be phasing out its operations and continue to perform some manufacturing functions at the CTPC facility for up to one year.[5] *Id.* ¶ 53. To that end, Cairo encouraged Aspera to stay, apprising her on March 15th that she and the other employees selected for termination would be eligible for a "stay bonus," based on the time they remained with CTPC after May 2001. *Id.* Nonetheless, Aspera thereafter applied for, received and accepted another dispatcher position with a trucking company. *Id.* ¶ 54. On April 16, 2001, Aspera

---

[4]Ultimately, Copperweld's restructuring plan would result in the termination of 69 employees, 63 of which were male. Def.'s LR 56.1(a)(3) ¶ 55.

[5]Copperweld asserts that it "implemented its reduction in force at CTPC and Welded Tube from March 2001 until approximately January 2002." Def.'s LR 56.1(a)(3) ¶ 55.

informed Neubauer of her resignation, and Aspera's last day of work at CTPC was on April 20, 2001. *Id.*

Thereafter, on April 26, 2001, Aspera filed a charge with the Illinois Department of Human Rights ("IDHR"). On May 28, 2004, the EEOC issued Aspera her right to sue letter and on June 30, 2004, Aspera timely filed a one-count complaint alleging violations of Title VII, 28 U.S.C. § 2000e, *et seq.* Aspera filed a second amended complaint on April 14, 2005, incorporating by reference her charge of discrimination with the IDHR. Though not entirely clear, it appears that Aspera alleges three claims: (1) sex harassment based on a hostile work environment, (2) sex discrimination, and (3) retaliation.[6] *See generally* Second Am. Compl. Ex. A.

## Legal Standard

To prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). At this stage, the Court does not weigh evidence or determine the truth of the matters asserted, see *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). Significantly, the Court views all evidence and draws all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.,* 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the

---

[6]The sentence where Aspera references any claims reads as follows: "The company then also discrimination and harassment and hostile work environment in exchange for being kept on until May 15, 2001, and in exchange for receiving a severance payment." Second Am. Compl. Ex. A ¶ V. The structural errors in this sentence are found in the original.

non-moving party. *Id.*

In addition, where "undisputed facts give rise to disputed inferences," summary judgment is not appropriate. *Harley-Davidson Motor Co., Inc. v. Powersports, Inc.*, 319 F.3d 973, 989 (7th Cir. 2003) ("[T]he choice between reasonable inferences from facts is a function of the fact-finder."). *See also Ramirez v. The Nutrasweet Co.*, No. 95 C 0130, 1997 WL 684984, at *7 (N.D. Ill. Oct. 27, 1997) ("[I]f the evidence presented by the parties is subject to conflicting interpretations, or if reasonable minds could differ as to its significance, summary judgment must not be granted.") (citing *O'Connor v. Chicago Transit Auth.*, 985 F.2d 1362, 1366 (7th Cir. 1993)).

## Analysis

### I.    Aspera's Hostile Work Environment Sexual Harassment Claim.

As noted, it appears that Aspera alleges a hostile work environment sexual harassment claim based on Temores' alleged comments between December 2000 and February 6, 2001. *See* Second Amended Compl. Ex. A. In response, Copperweld argues that Aspera's hostile work environment claim fails because: (1) the harassment was not sufficiently severe or pervasive to alter the terms and conditions of Aspera's working environment, (2) Copperweld was not negligent in discovering or remedying the alleged harassment, and (3) Aspera did not take advantage of the available preventative or corrective opportunities in order to avoid harm. Def.'s Mem. Supp. Mot. Summ. J. at 21, 28, 34. If true, any one of the three arguments would be a sufficient ground for this Court to grant summary judgment.

Pursuant to 42 U.S.C. § 2000e-2(a)(1), it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms,

conditions, or privileges because of an individuals race, color, religion, sex or national origin."

*Moser v. Ind. Dept. of Corr.*, 406 F.3d 895, 902 (7th Cir. 2005). Aspera "may establish a violation

of Title VII by proving that discrimination based on sex has created a hostile or abusive work

environment." *Id.* To present a *prima facie* case of hostile work environment sex harassment,

Aspera must show that:

> (1) she was subjected to unwelcome sexual harassment in the form of sexual
> advances, requests for sexual favors or other verbal or physical conduct of a sexual
> nature; (2) the harassment was based on [the individual's] sex; (3) the sexual
> harassment had the effect of unreasonably interfering with the plaintiff's work
> performance in creating an intimidating, hostile or offensive working environment
> that affected seriously the psychological well-being of the employee; and (4) there
> is a basis for employer liability.

*Hall v. Bodine Elec. Co.*, 276 F.3d 345, 354-55 (7th Cir. 2002) (quoting *Parkins v. Civil

Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998)) (alteration in original).

### A.    *The Supervisor/Co-Worker Distinction in Hostile Environment Cases.*

Assuming *arguendo* Aspera met elements one through three, the Court will focus its analysis

on the fourth element, namely whether there is a basis to hold Copperweld liable.[7] *See id.* As

recognized by the Seventh Circuit, "[a]n employer's liability for hostile environment sexual

harassment hinges on whether the harasser is the victim's supervisor or merely a co-employee." *Id.*

Where the harassment is by a supervisor, the employer is vicariously liable, see *id.* (quoting

*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 745 (1998)), but where the harassment is by a co-

---

[7] The Court utilizes this approach, rather than considering whether Aspera's allegations of harassment were severe or pervasive such as to alter the terms and conditions of her working environment, because this approach assumes that she is able to meet elements one through three, therefore resulting in less prejudice to Aspera for the failings of her attorneys.

employee, the employer is liable "only when [it has] been negligent in either discovering or remedying the harassment." *Parkins*, 163 F.3d at 1032 (quoting *Perry v. Harris*, 50 F.3d 428, 432 (7th Cir. 1995)) (internal quotation omitted). The lesser standard of employer liability for co-employee harassment stems from the rationale that "employers do not entrust mere co-employees with any significant authority with which they might harass a victim." *Id.* Thus, where an employer reasonably acts to discover and rectify incidents of sexual harassment, its duty will be satisfied. *Id.*

Though Title VII does not define the term "supervisor," because of the legal importance of the co-employee/supervisor classification, the Seventh Circuit has provided some guidance for lower courts to distinguish between the two. *See id.* at 1033. As the *Parkins* court recognized,

> [I]t is manifest that the essence of supervisory status is the authority to affect the terms and conditions of the victim's employment. This authority primarily consists of the power to hire, fire, demote, promote, transfer, or discipline an employee. Absent an entrustment of at least some of this authority, an employee does not qualify as a supervisor for purposes of imputing liability to the employer.

*Id.* at 1034. *Cf. Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) (discussing employer liability for a supervisor's actions); *Ellerth*, 524 U.S. at 742 (same). With these principles in mind, the Court turns to the issue of whether the alleged harasser, Temores, is considered a co-employee or a supervisor. For a number of reasons, the Court finds that Temores is properly considered a co-worker rather than Aspera's supervisor.

First, Aspera's direct supervisor was Neubauer, the Traffic Supervisor at Copperweld's CTPC facility. Def.'s LR 56.1(a)(3) ¶ 13. This fact is reflected in Aspera's deposition testimony. *See* Aspera Dep. at 49:11-13. Though Temores served as *a* Traffic Supervisor, he did not serve as *Aspera's* supervisor, rather Temores served as the Traffic Supervisor for the traffic department at

Copperweld's Welded Tube facility, a department separate from that at CTPC. *Id.* ¶¶ 7, 16, 21, 48-49. Thus, by Aspera's own admission, Temores was not her supervisor.

> Second, and as deemed admitted, Copperweld asserted:

> Temores at no time had authority to make any decisions affecting the terms and conditions of Aspera's employment. He had no authority to, and did not hire, fire, promote, demote, discipline, or transfer Aspera. He had no authority to, and did not, determine or have input into Aspera's work hours, compensation, performance evaluations, or other terms or conditions of her employment.

*Id.* ¶ 17 (internal citations omitted). This admission is significant as it clearly mirrors the language used in cases distinguishing a co-worker from a supervisor in the Seventh Circuit and the U.S. Supreme Court. *See Parkins,* 163 F.3d at 1034. *See also Hall,* 276 F.3d at 355 (quoting *Parkins*); *Haugerud v. Amery School Dist.,* 259 F.3d 678, 698 (7th Cir. 2001) (noting that "[a] tangible employment action 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'") (quoting *Ellerth,* 524 U.S. at 761).

Finally, the Court pauses for a moment to consider the fact that Temores "filled in" for Neubauer during the latter's vacation in early February 2001 and its effect on this case. While one could conceivably base an argument that Temores was Aspera's supervisor rather than a co-worker on this fact, the Court notes that Aspera would nevertheless be unable to establish Temores as her supervisor. Temores tenure as Aspera's fill-in supervisor was brief: he "filled in" for Neubauer for approximately one week. Moreover, the record is silent as to whether Temores exercised anything but an oversight role during that time period. This second fact is important because "the fact that an employer authorizes one employee to oversee aspects of another employee's job performance

does not establish a Title VII supervisory relationship." *Hall*, 276 F.3d at 355. Thus, the temporary duration of Temores' supervision role, and the absence of evidence showing Temores possessed anything more than oversight authority fails to establish that Temores could "*directly* affect the terms and conditions of [Aspera's] employment." *Id.* (emphasis in original). Accordingly, the Court finds that Temores should be classified as Aspera's co-worker, rather than her supervisor.

**B.** ***Aspera's Reporting of Temores' Allegedly Harassing Comments and the Adequacy of Copperweld's Response Thereto.***

Having determined that Temores is properly classified as Aspera's co-worker, the Court turns to the issue of whether Copperweld was "negligent in either discovering or remedying the harassment." *Parkins*, 163 F.3d at 1032 (quoting *Perry*, 50 F.3d at 432). In cases involving co-worker harassment, an employer "will not be liable for [a] hostile environment absent proof that it failed to take appropriate remedial measures once apprised of the harassment." *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 809 (7th Cir. 2000). "Generally, the law does not consider an employer to be apprised of the harassment 'unless the employee makes a concerted effort to inform the employer that a problem exists.'" *Hrobowski v. Worthington Steel Co.*, 358 F.3d 473, 478 (7th Cir. 2004) (quoting *Silk v. City of Chicago*, 194 F.3d 788, 807 (7th Cir.1999)). *See also Cerros v. Steel Techs., Inc.*, 398 F.3d 944, 952 (7th Cir. 2005) ("The relevant inquiry is therefore whether the employee adequately alerted her employer to the harassment, thereby satisfying her obligation to avoid the harm, not whether she followed the letter of the reporting procedures set out in the employer's harassment policy."). Here, the record reflects that Aspera did not make a "concerted effort" to inform Copperweld of two of the five allegedly harassing types of comments, despite the

-14-

existence of a sexual harassment reporting procedure. Def.'s LR 56.1(a)(3) ¶ 8. In fact, during her deposition, Aspera testified as follows:

> Q:    Did you report to anyone in HR or management Tony Temores' asking you if you were married?
>
> A.    No.

Aspera Dep. 125:17-19. *See also* Def.'s LR 56.1(a)(3) ¶ 25 (pointing out Aspera's failure to report Temores' queries regarding her marital status).

> Q:    Did you report this alleged comment about not being able to do your job because you were a girl or not being a good dispatcher because you're a girl to anyone in HR or management?
>
> A:    No.

Aspera Dep. 129:18-22. *See also* Def.'s LR 56.1(a)(3) ¶ 26 (pointing out Aspera's failure to report Temores' comment regarding her inability to do her job because she is a "girl"). Rather than inform Copperweld around the time of Temores' alleged harassment, instead, it appears that Aspera informed Copperweld of these two comments only when she filed her charge with the IDHR. *See generally* Second Amended Compl. Ex. A. Because of Aspera's failure to report these two comments, she cannot reasonably expect to hold Copperweld liable for such comments.[8]

---

[8] While "an employer could be charged with constructive notice where the harassment was sufficiently obvious," see *Hrobowski*, 358 F.3d at 478, the record does not support a position that Copperweld had constructive notice of these comments in light of Aspera's testimony. Specifically, Aspera testified that Temores' queries regarding her marital status occurred exclusively over the telephone. Aspera Dep. at 70:6-22. Similarly, Temores' comments teasing of Aspera regarding her ability to do her job were generally made over the telephone and there were no witnesses to those conversations. *Id.* at 15-17. Though Aspera testified he made a similar comment one day in person, pointing out a potential witness, Aspera did not know if that

-15-

With respect to the remaining three comments that Aspera did report, and still assuming *arguendo* that Aspera can meet elements one through three of her *prima facie* case, the Court finds that Copperweld took appropriate remedial measures by promptly investigating the matter and issuing a reprimand to Temores in response to Aspera's complaint regarding Temores' alleged behavior. The Seventh Circuit has repeatedly recognized "prompt investigation of the alleged misconduct as a hallmark of a reasonable corrective action." *Cerros,* 398 F.3d at 954 (citing *Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 428 (7t Cir. 2004); *Savino v. C.P. Hall Co.,* 199 F.3d 925, 933 (7th Cir. 1999); *Saxton v. Am. Tel. & Tel. Co.,* 10 F.3d 526, 535 (7th Cir. 1993)).

As noted above, Aspera reported Temores' carpet/drapes comment, Temores' dating requests as well as the February 6th zipper incident to Neubauer upon his return from vacation on February 12, 2001. Def.'s LR 56.1(a)(3) ¶¶ 23- 24, 32 (citing Aspera Dep. at 116:16-22; 122:3-9; 152:21-153:2). After receiving notice of Temores' alleged comments, Neubauer called Temores, discussed the February 6th incident with him and told Temores not to contact Aspera. *Id.* ¶ 34. Further, Neubauer reported Aspera's complaint to Welded Tube's human resources manager, Charles Weede, who immediately undertook his own investigation, interviewing both Temores and Aspera, the only witnesses to the incident. *Id.* ¶ 35-36. Three days after Aspera's first allegations of harassment, Welded Tube issued a written reprimand to Temores, explicitly warning him that if he received another complaint for sexual harassment, and that charge was found to be true, he would be terminated.[9] *Id.* ¶ 38. As a result, the Court finds that Copperweld effectively responded to Aspera's

---

person heard the comment. *Id.* at 129:1-18.

[9]While the reprimand also instructed Temores not to further contact with Aspera, see Def.'s LR 56.1(a)(3) ¶ 38, Temores had brief work-related contacts with Aspera by telephone and e-mail. But, even if Temores made additional inappropriate comments to Aspera, which he did

complaint by promptly investigating the matter and reprimanding Temores. *See Tutman v. WBBM-TV, Inc./CBS, Inc.*, 209 F.3d 1044, 1049 (7th Cir. 2000) (finding that an employer took a prompt and effective response to an employee's allegation of harassment where the employer (1) "began investigating [the employee's] allegation on the day of the incident," (2) interviewed both the alleged victim and harasser the next work day, (3) completed its investigation within two weeks, (4) "sanctioned [the alleged harasser] by issuing him a letter of reprimand, sending him to sensitivity training and commanding him to apologize to [the victim]," and (5) when the victim "would not return to work, [the employer] offered to arrange his and [the alleged harasser's] work schedules so that they would have no contact with each other at work"). Thus, the Court grants Copperweld's motion for summary judgment as to Aspera's hostile work environment claim.

## II.    Aspera's Sex Discrimination Claim.

Next, and according to her second amended complaint, it appears that Aspera alleges that her selection for termination was sexually discriminatory. *See* Second Amended Compl. Ex. A. ¶ V. In response, Copperweld argues that "Aspera cannot establish that [its] articulated reason for terminating her employment was a pretext for sex discrimination." Def.'s Mem. Supp. Summ. J. at 42. In so arguing, Copperweld assumes that Aspera can establish a *prima facie* case, but asserts that "there is no genuine issue of material fact concerning the non-pretextuality of Copperweld's

---

not, this fact would not alone establish that Copperweld failed to take appropriate remedial action since the relevant issue is whether Copperweld's action "was reasonably likely to prevent the harassment from recurring." *Cerros*, 398 F.3d at 954 (quoting *Williams v. Waste Mgmt. of Ill.*, 361 F.3d 1021, 1029 (7th Cir. 2004)). *See also id.* (noting that "Title VII does not require that the employer's responses to a plaintiff's complaints . . . successfully prevent [] subsequent harassment") (quoting *Savino*, 199 F.3d at 933) (alterations in original).

articulated reason for selecting Aspera for termination." *Id.* at 39.

As the plaintiff, Aspera has two methods available to prove employment discrimination based on sex under Title VII: the direct and indirect methods. *See Cerutti v. BASF Corp.,* 349 F.3d 1055, 1060 (7th Cir. 2003). Under the direct method, Aspera "may show, by way of direct or circumstantial evidence, that [Copperweld's] decision to take an adverse job action against her was motivated by an impermissible purpose" such as sex. *Id.* at 1061. Not presented in this case, direct evidence under the direct method essentially "requires an admission by the decision-maker that his actions were based on the prohibited animus." *Radue v. Kimberly-Clark Corp.,* 219 F.3d 612, 616 (7th Cir. 2000). Similarly, and in no small part due to counsel's failure to timely file a response to Copperweld's motion for summary judgment, Aspera has not presented a "convincing mosaic of circumstantial evidence" pointing *"directly* to a discriminatory reason for [Copperweld's] action." *Davis v. Con-Way Transp. Cent. Express, Inc.,* 368 F.3d 776, 783 (7th Cir. 2004) (emphasis added). Thus, if Aspera is to prevail on her sex discrimination claim, she will have to proceed under the indirect method, also known as the burden shifting method.

"[U]nder the burden shifting method first articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)," Aspera "must first establish four elements, in order to go forward: (1) she is a member of a protected class; (2) she performed her job satisfactorily; (3) she suffered an adverse employment action; and (4) the defendant treated similarly situated employees outside her class more favorably."[10] *Russell v. Bd. of Tr. of Univ. of Ill. at Chicago,* 243 F.3d 336, 341 (7th Cir. 2001)

---

[10]At a glance, it is questionable whether Aspera would be able to establish that Copperweld treated male employees more favorably in making its reduction in force decisions. According to Copperweld, it terminated a total of three employees from the transportation departments of both CTPC and Welded Tube - two females (including Aspera) and one male. Def.'s LR 56.1(a)(3) ¶ 53. In total, CTPC and Welded Tube terminated sixty-nine employees -

(citing *Simpson v. Borg-Warner Auto., Inc.*, 196 F.3d 873, 876 (7th Cir.1999)). Again, assuming *arguendo* that Aspera could demonstrate a *prima facie* case under the indirect method, and shift the burden to Copperweld to articulate a legitimate business justification for its action, Aspera would likely be unable to "present sufficient evidence to create a triable issue with respect to whether this justification is pretextual." *Id.* (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 508 (1993)).

Copperweld provides three reasons for its selection of Aspera for termination in accordance with its cost saving plan. *Compare* Def.'s LR 56.1(a)(3) ¶ 47 (noting that Copperweld's parent, LTV Steel Company filed for bankruptcy protection in December 2000 and Copperweld's February 2001 announcement of its plan to consolidate its Chicagoland operations in an effort to save money) *with Bridges v. IIT Res. Inst.*, 894 F. Supp. 335, 339 (N.D. Ill.,1995) (finding that an employer articulated a legitimate, non-discriminatory reason for employee's termination in an age discrimination case filed following a reduction in force, in part where uncontested evidence showed that the employer was experiencing financial difficulties). Copperweld states first that it based its decision on the fact that Aspera had the shortest length of service of any employee in the Traffic Departments of both CTPC and Welded Tube. Def.'s LR 56.1(a)(3) ¶ 52. *See Smith v. Gen. Scanning, Inc.*, 876 F.2d 1315 (7th Cir. 1989) (finding a lack of seniority as a legitimate, non-discriminatory reason for terminating an age discrimination plaintiff). Second, it contends that Aspera lacked "the breadth of experience" possessed by the Traffic Department employees that were ultimately retained. Def.'s LR 56.1(a)(3) ¶ 52. *See Bohse v. Met. Water Reclamation Dist. of Greater Chicago*, 30 F. Supp. 2d 1047, 1052 (N.D. Ill. 1998) (finding water district employee's lack of treatment plant construction

---

sixty-three male, six female. *Id.* ¶ 55. *See, e.g., Chavez v. Ill. State Police,* 251 F.3d 612, 636 (7th Cir. 2001) (discussing plaintiffs attempt to show that they were treated "differently than other similarly situated individuals . . . through the use of statistics").

experience as a legitimate non-discriminatory reason for denying the employee a promotion). Finally, it selected Aspera because she was unwilling to work shifts other than the day shift, a willingness that would have increased her utility if retained. Def.'s LR 56.1(a)(3) ¶ 52. *See Snellgrove v. Teledyne Abbeville,* 117 F. Supp. 2d 1218, 1246 (M.D. Ala. 1999) (finding employer's reason for terminating employee, that all employees performing jobs which were reassigned to the second shift were required to accept that assignment, was a legitimate, non-retaliatory reason for the termination of an employee that employee refused to move to the second shift). Thus, since the Court finds Copperweld has set forth three legitimate, non-discriminatory reasons for its decision to select Aspera for termination, it shifts the burden to Aspera to show that each of Copperweld's reasons are a "dishonest explanation, a lie rather than an oddity or error." *Ballance v. City of Springfield,* 424 F.3d 614, 617 (7th Cir. 2005).

Not surprisingly, Aspera is unable to meet this burden, which "requires more than showing that the decision was mistaken, ill considered or foolish." *Id.* The Court notes Aspera's failure, in part, stems largely from her counsel's failure to timely respond to Copperweld's summary judgment motion. Indeed, as other courts have noted, Local Rule 56.1 statements of fact are "road maps" and "without them, the court should not have to proceed further." *Brown v. Union Pac. R.R. Co.,* 03 C 2171, 2006 WL 299070, at *15 (N.D. Ill. Feb. 7, 2006) (quoting *Waldridge,* 24 F.3d at 923). Thus, Aspera's failure to offer any proof rebutting Copperweld's legitimate, non-discriminatory reasons for her termination, "concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Furthermore, to the extent that Aspera's second amended complaint alleges pretext, it is limited to Aspera's evaluations of the quality of her own work and her ability to do her job. In

Aspera's own words:

. . . .

> V.     They laid me off and retained the respondent harasser, Tony Temores, despite the fact that I had extensive experience working dispatch on the Tandem Computer System, and Temores did not (I was training him). In addition, I have worked in the transportation field and am extensively familiar with it and have worked in this area for at least seven years prior to being hired by respondent. In total I had nine years of transportation experience at the time I was fired. . . .

> VI.    My work was always good and I never got any reprimands for my work. I got many letters from customers and carriers complimenting me on my work which the company told me they were going to keep in my personnel file. I never failed to meet the respondent employer's legitimate expectations for my work and in fact I exceeded those expectations.

. . . .

Second Amended Compl. Ex. A. ¶ VI. However, instead of establishing pretext, these self-serving evaluations would help Aspera to state a *prima facie* case, which, for the sake of argument, this Court has assumed. *See Russell*, 243 F.3d at 341 (requiring an employment discrimination plaintiff to show that s/he performed his/her job satisfactorily). Moreover, Aspera's statement that she had "nine years of transportation experience" does not address Copperweld's stated position that Aspera had the least service specifically *in the Traffic Departments of CTPC and Welded Tube*, when compared to other employees. Def.'s LR 56.1(a)(3) ¶ 52. Because this Court is not a "super personnel review board" it will not second-guess Copperweld's reasons for selecting Aspera for termination, particularly where Aspera has not presented evidence showing that those reasons are a lie. *See Ajayi*, 336 F.3d at 532; *Ballance*, 424 F.3d at 617. Thus, the Court grants Copperweld's motion for summary judgment as to Aspera's sex discrimination claim based on her termination.

**III.    Aspera's Retaliation Claim.**

Aspera appears to allege that Copperweld retaliated against her for reporting Temores' allegedly harassing behavior by selecting her for termination. Second Amended Compl. Ex A. Copperweld asserts, however, that "[t]here is no evidence in this case of any animus against Aspera for having complained of alleged harassment." Def.'s Mem. Supp. Mot. Summ. J. at 41. Thus, as a final matter, the Court addresses Aspera's retaliation claim.

Pursuant to Title VII, an employer may not retaliate against an employee who has "opposed any practice made an unlawful employment practice by this subchapter . . . or has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). Like with her sex discrimination claim, Aspera can proceed under either the direct method or the indirect method.

Under the direct method, Aspera must show: "(1) that she engaged in a statutorily protected activity; (2) that she suffered an adverse employment action and (3) there was a causal link between the protected expression and the adverse action." *Culver*, 416 F.3d at 545. Assuming Aspera can meet the first two elements under the direct method, the Court finds that Aspera's claim would fail under the third element - causation. "A causal link between the protected expression and an adverse employment action may be established by showing that the protected conduct was a substantial or motivating factor in the employer's decision." *Id.* (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 942 (7th Cir. 2004)).

In her deposition, when asked to testify as to the facts upon which she believed that her selection for termination was retaliatory, Aspera offered only one: "Because other people were asked to stay on that had less experience than me." Aspera Dep. 195:16-23. However, this "fact" does not

-22-

does not provide direct or indirect evidence of an improper animus. It is not evidence of an admission by a Copperweld decisionmaker that he or she selected Aspera for termination because of her sexual harassment allegation. *Mannie v. Potter,* 394 F.3d 977, 983 (7th Cir. 2005). Nor does it alone point directly to retaliatory intent. *See Davis,* 368 F.3d at 786 (requiring circumstantial evidence submitted under the direct method to point directly to a discriminatory intent). Thus, if Aspera is to proceed on her retaliation claim, she must rely on the same *McDonnell Douglas* burden-shifting analysis that applied to her discrimination claim. *Miller v. Am. Family Mut. Ins. Co.,* 203 F.3d 997, 1007 (7th Cir.2000).

Focusing again on the third-stage of the burden-shifting analysis, whether Aspera can demonstrate that Copperweld's reasons for her termination are pretextual, the Court finds that, for the same reasons set forth with respect to Aspera's sex discrimination claim, Aspera is unable to demonstrate that those reasons are pretext. *See Olsen,* 267 F.3d at 600 (noting that in reviewing a "disposition of a sex discrimination or retaliation claim, we can move directly to the third stage of the burden-shifting paradigm, the question of pretext") (citing *Rummery v. Ill. Bell Tel. Co.,* 250 F.3d 553, 556 (7th Cir.2001)); *Alexander v. Wisc. Dept. of Health and Family Svcs.,* 263 F.3d 673, 682 (7th Cir. 2001) (considering discrimination and retaliation claims together in a case where the parties agreed "that the only disputed issue with regard to [the employee's] claims . . .of discrimination and retaliation [was] whether the stated reasons for his suspension and termination [were] pretext). Moreover, Aspera's opinion that Copperweld retained less experienced individuals does not serve to rebut Copperweld's legitimate non-retaliatory reasons for her termination, particularly its reason that it terminated Aspera in part "because she had worked in CTPC's Traffic Department for only two years, the shortest length of service of any employee in the Traffic Departments of Copperweld

and Welded Tube." Def.'s LR 56.1(a)(3) ¶ 52; *Smith*, 876 F.2d at 1315 (finding a lack of seniority as a legitimate, non-discriminatory reason for terminating an age discrimination plaintiff). Had Copperweld offered that it selected Aspera for termination because she lacked experience in the transportation field in general, Aspera's statement, if supported by admissible evidence, might have helped her to demonstrate that Copperweld's reason "had no basis in fact, [] did not actually motivate its decision; or [] was insufficient to motivate its decision." *Grayson v. O'Neill*, 308 F.3d 808, 820 (7th Cir. 2002) (citing *Velasco v. Ill. Dept. of Human Servs.*, 246 F.3d 1010, 1017 (7th Cir. 2001). But since Copperweld did not assert such a reason, Aspera's claim must fail. Accordingly, the Court grants Copperweld's motion for summary judgment as to Aspera's retaliation claim.

### Conclusion

For the reasons provided above, the Court grants Copperweld's motion for summary judgment on Aspera's claim that Temores' alleged actions subjected her to a hostile work environment and her claims that her selection for termination was discriminatory based on sex and also in retaliation to her opposition of Temores' alleged actions. This case is hereby terminated. This order is final and appealable.

**ENTERED:**

**DATED:** FEB 2 4 2006

_____
**UNITED STATES DISTRICT JUDGE**